## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| BRUSH DENTISTRY, PLLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 4:16-cv-03379 |
| | § | |
| DR. PHUONG PHAM d/b/a | § | |
| BRUSH DENTISTRY and | § | |
| SERENITY DENTISTRY, PLLC | § | |
| Defendants | § | |
| | § | |

## DEFENDANTS' PRE-TRIAL PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendants Dr. Phuong Pham and Serenity Dentistry, PLLC (hereinafter Defendants) pursuant to the Court's Scheduling Order [Dkt. No. 10] and the local rules for the Southern District of Texas, and in conjunction with the parties' Joint Pretrial Order, files these pre-Trial Proposed Findings of Fact and Conclusions of Law in the above captioned litigation against Defendants and Brush Dentistry, PLLC (hereinafter "Plaintiff").

Defendants accordingly submit the following for the Court's consideration:

1

## PROPOSED FINDINGS OF FACT[1]

### A.    Origins of this dispute

1.    On May 18, 2011, plaintiff secured the name "Brush Dentistry, PLLC" with the Texas Secretary of State and on or about May 19, 2011 obtained the domain name "www.brushdentistry.com".

2.    On or about October 2011, plaintiff performed its first dental services in association with the term "brush dentistry". The place of performance of these services was 1100 N. Blue Mound Road, Suite 100, Saginaw, Texas 76131, which remains plaintiff's sole physical location.

3.    On or before July 4, 2016, defendants performed their first dental services in association with the term "brush dentistry". The place of performance of these services was 3535 Rayford Road, Suite 300, Spring, Texas 77386, which remains defendants' sole physical location.

4.    Plaintiff became aware of defendants' use of the term "brush dentistry" in September 2016, and sent defendants a cease and desist letter dated September 19, 2016 to which defendants' did not respond.

5.    On September 20, 2016 plaintiff filed a trademark application for BRUSH DENTISTRY for cosmetic and general family dentistry in class 44, and the mark registered in Texas on March 24, 2017.

---

[1] Defendants will submit specific sources and citations for each fact upon the conclusion of trial,

6.      On November 15, 2016, plaintiff initiated these legal proceedings.

**B.      Facts negating the enforceability of Plaintiff's marks**

7.      Presently, multiple dental practices in Texas use the term "brush" in association with providing dental services, many of which provide such services in or near the Dallas-Fort Worth metropolitan area ("DFW" or "DFW metroplex"), and at least two of which have coexisted with plaintiff for multiple years without legal incident.

8.      The following dental practices in Texas use or have used the terms "brush", "dental", or "brush dental" or variations thereof:

| Name of Entity or dba | Address |
| --- | --- |
| brush. | 800 Forest Oaks Ln Suite A, Hurst, Tx 76053 |
| Brush 32 Round Rock | 110 N Interstate Hwy 35 #380, Round Rock, Tx 78681 |
| Brush 32 Hutto | 4810 Gattis School Rd Suite 120, Hutto, Tx 78634 |
| Brush 32 Pflugerville | 2324 Farm to Market 685 #400, Pflugerville, Tx 78660 |
| Brush 32 Cedar Park | 1201 N Bell Blvd #102, Cedar Park, Tx 78613 |
| Brush Dental Domain | 3310 W Braker Ln, BLDG 100 Austin, Tx 78758 |
| Brush 32 Central Austin | 3500 Jefferson St #106, Austin, Tx 78731 |
| Brush Dentistry | 3535 Rayford Rd, Spring, Tx 77386 |
| Love Brushing Dentistry | 13740 East Freeway Road, Suite D, Houston, Texas |
| Brush Bright Dental | 1309 West Fairmont Pkwy, Suite C, La Porte, Tx 77571 |
| Brush Country Dental Center | 800 N Bryant St, Pleasanton, Tx 78064 |
| Brush Family Dental | 2230 W Walnut Hill Ln Irving, Tx 75038 |
| Brush Modern Dentistry Frisco | 2990 Blackburn St Apt 3135 Dallas Tx 75204 |
| Brush 32 Dallas | 12770 Merit Dr, Suite 850 Dallas Tx 75251 |
| Brush Dental | 125 W. I-30 Suite H, Royse City, Tx 75189 |
| Brush Dentistry | 1100 N Blue Mound Rd Suite 100 Saginaw, Tx 76131 |
| Brush Dental South | 3310 W. Braker Ln, BLDG 1-100 Austin, Tx 78758 |

when the official record is made available to the parties.

9.     Additional known and public information on each dental practice identified above is provided below:

| Name of Entity or dba | Texas SOS Registration date | Texas SOS Status | Distance from Plaintiff's Office |
|---|---|---|---|
| brush. | | | 13 Mi |
| Brush 32 Round Rock | | | 180 Mi |
| Brush 32 Hutto | 4/19/17 | Active | 182 Mi |
| Brush 32 Pflugerville | 5/31/16 | Active | 185 Mi |
| Brush 32 Cedar Park | | | 188 Mi |
| Brush Dental Domain | 3/10/16 | Active | 191 Mi |
| Brush 32 Central Austin | 3/27/17 | Active | 197 Mi |
| Brush Dentistry | | | 260 Mi |
| Love Brushing Dentistry | | | 282 Mi |
| Brush Bright Dental | 4/17/13 | Inactive | 305 Mi |
| Brush Country Dental Center | | | 324 Mi |
| Brush Family Dental | 11/30/12 | Active | 34.5 Mi |
| Brush Modern Dentistry Frisco | 3/9/17 | Active | 37.7 Mi |
| Brush 32 Dallas | 9/15/17 | Active | 47.5 Mi |
| Brush Dental | | | 67.9 Mi |
| Brush Dentistry | 3/24/17 | Active | |
| Brush Dental South | 12/19/16 | Active | |

10.     In Dr. Jennifer Libling's deposition dated July 31, 2017, the following business entities were discussed:

| Name of Entity or dba | Practice Location | Plaintiff's Actions Taken |
|---|---|---|
| Brush Dental[*] | Royse City (near Dallas) | None |
| Brush. Dentistry with Integrity | Hurst (within DFW) | Contacted once - no legal action |
| Brush Dental | Irving (within DFW) | None |
| Brush Family Dental[†] | Irving (within DFW) | None |
| Brush32 Dental[‡] | Pflugerville, TX | None |
| BRSH Dental | Houston, TX | None |
| Bruch Country Dental Center[**] | Pleasanton, TX | None |
| Brush Modern Dentistry[††] | Frisco (near Dallas) | None |
| Brush Dentistry | Spring, TX | Defendant in this case. |

\* *Plaintiff has been aware of this practice since 2013.* Dep. Of Dr. Jennifer Libling 23 at 24:14-15.
† *Registered in Texas as "Brush Family Dental, PLLC" since 2012. Id. at 29:24-25.*
‡ *Registered in Texas as "Brush32 Dental of Pflugerville, PLLC". Id. at 30:9-12.*
\*\* *Registered in Texas as "Brush Country Dental Center, LLP" since 2004. Id. at 33:12-18.*
†† *Registered in Texas as "Brush Modern Dentistry Frisco, PLLC. Id. at 35:2-4.*

11.     Of the businesses identified above, all have coexisted with Plaintiff since at least their registration date with the Texas Secretary of State.

12.     At least one of the entities above owns an active trademark registration with the United States Trademark and Patent Office that predates and trademark claims asserted by Plaintiff.

13.     The definition of "brush" as a noun is: "an implement consisting of bristles, hair, or the like, set in or attached to a handle, used for painting, cleaning, polishing, grooming, etc."

14.     The definition of "brush" as a verb is: to "sweep, paint, clean, polish, etc., with a brush."

15.     The definition of "dentistry is: "the profession or science dealing with the prevention and treatment of diseases and malformations of the teeth, gums, and oral cavity, and the removal, correction, and replacement of decayed, damaged, or lost parts, including such operations as the filling and crowning of teeth, the straightening of teeth, and the construction of artificial dentures."

16.     Plaintiff's registered disclaims the use of the term "dentistry".

17.     At least one of Plaintiff's advertisements states, "("Dear Parents, As part of Dental Health Month your child learned about taking care of his/her teeth today. We *discussed brushing* twice a day for two minutes and flossing once a day to keep our teeth healthy") (emphasis added).

**C.     Facts negating likelihood of confusion between the parties' marks**

18.     The following chart summarizes noticeable differences between the parties' respective logos:

| Plaintiff's Mark | Defendants' Mark |
|---|---|
| "brush" in light blue*, lower case letters | "BRUSH" in gradient dark to medium blue, block letters |
| "DENTISTRY" in green, block letters | "DENTISTRY" in grey, block letters |
| "brush" slightly larger than "DENTISTRY" | "BRUSH" substantially larger than "DENTISTRY" |
| Design element comprises the stylized head of a white[†] toothbrush and toothpaste | Design element comprises a non-stylized, white tooth |
| Design element set against a light blue background with white border | Design element set against a gradiant grey background with no border |

19.     within the USPTO database alone at least 325 marks display a brush or toothbrush in association with their respective dental services, at least 1541 marks display a tooth or teeth in association with their respective dental services, and at least 2850 marks display a circle backdrop.

20.     The parties maintain separate offices in distinct metropolitan areas approximately 250 miles apart.

21.     The vast majority of Plaintiff's clients have come from Saginaw and immediately surrounding areas.

22.    Plaintiff has only treated four clients with addresses in and around the greater Houston, Texas area over the last three years.

23.    None of the clients treated by Plaintiff in the last three years maintains an address in Spring, TX.

24.    Plaintiff has not presented any evidence to suggest that its non-local clients have always been non-local, or that non-local clients did not receive treatment in the plaintiff's office in Saginaw.

25.    At least two of the clients maintaining addresses in the greater Houston area are students who initially resided and began treatment while residing in or near Fort Worth.

26.    Plaintiff has disclosed that 80% of its clients come from Saginaw and Fort Worth, and roughly 20% of its clients come from surrounding zip codes.

27.    Plaintiff has never advertised more than fifty miles from its Saginaw office.

28.    Plaintiff has never advertised in or around the Spring, Texas or Houston, Texas areas.

29.    Plaintiff only names as its competitors dental practices located within a five mile radius of its Saginaw office.

30.    In Dr. Jennifer Libling's deposition dated July 31, 2017, she stated "[m]y target audience is people in need of general and family dental services that would be willing to come to our practice."

31.    In Dr. Libling's deposition dated July 31. 2017, she explained that that the likelihood of a potential patient traveling from Spring, TX to Saginaw, TX does not justify the cost of printed advertising.

32.    In Dr. Jennifer Libling's deposition dated July 31, 2017, she engaged in the following dialogue:

> Q. So do you contend that your practice has a reputation throughout the State of Texas?
>
> A. …I believe that my reputation follows me throughout Texas.
>
> Q. And how do you know that? I understand you have a registration…I want to know: How do you know that you have a reputation throughout the state [sic] of Texas?
>
> A. I believe that by providing services in the state [sic] of Texas and using my trademark in the state [sic] of Texas that I've acquired a reputation over being in business the past five plus years.
>
> Q. So it's just a belief you hold?
>
> A. It's something I believe to be true, yes.

33.    Plaintiff's paid advertising consists primarily of printed promotional materials (e.g., door hangers, mailers, flyers) in and around its physical location in

Saginaw Texas and also sponsors local, community events and distributes promotional items.

34.    Defendants do not engage in printed advertising campaigns.

35.    Defendants never believed Plaintiff's trademark claims to have any merit.

36.    Wendy Kay mistakenly posted Defendants' logo on a series of promotional materials for an event sponsored in part by Plaintiff.

37.    Prior to Ms. Kay's mistake, Plaintiff had sent Ms. Kay a sponsorship form and Ms. Kay had replied by email with a receipt.

38.    Despite considering her a potential client and discovering her mistake, Plaintiff opted not to contact Ms. Kay or correct any existing or future confusion of origin.

39.    Both Plaintiff and Defendant have concurrently used the BRUSH DENTISTRY mark for more than 17 months.

40.    Plaintiff expends significant time and money to educate existing and potential clients.

41.    Plaintiff claims to be widely known throughout Texas.

42.    Plaintiff asserts that a client might be willing to travel as much as 250 miles to be treated by a dentist they have a relationship with and can trust.

## PROPOSED CONCLUSIONS OF LAW

**A.**  **BRUSH DENTISTRY is not a protectable or enforceable trademark, which precludes Plaintiff's trademark causes of action**

**1.**  **Brush Dentistry is generic.**

1.  Generic marks are never protectable, and descriptive marks are only protectable if they have a secondary meaning. Two Pesos Inc. v. Gulf Ins. Co., 505 U.S. 763, 768 (1992).

2.  The terms "brush" and "dentistry" independently comprise generic terms within the dental industry.

3.  Plaintiff's trademark BRUSH DENTISTRY is generic as it is a combination of two generic terms, "brush" and "dentistry," which together merely create a generic term for a type of dental service. *Firefly Digital Inc. v. Google Inc.*, 817 F. Supp.2d 846, 860 (2011) (finding that "Web Site Gadget" was a generic term for a web-site management tool); *see also Small Business Assistance Corp. v. Clear Channel Broadcasting, Inc.*, 210 F.3d 278, 279 (5th Cir.2000) (finding "Summer Jam" to be a generic term for a concert occurring during the summer months).

**2.**  **Alternatively, Brush Dentistry is *merely descriptive*.**

4.  Under the "Dictionary Test", BRUSH DENTISTRY is descriptive of plaintiff's services "in the sense that the words naturally direct attention to the purpose or function of the service." *See, Zatarains*, 698 F.2d at 792. Thus, the

definition of "brush dentistry" indicates it is a term of ordinary significance and meaning to the public. *Id*.

5.    Under the "Imagination Test" BRUSH DENTISTRY and its identifying terminology "is so close and direct that even a consumer unfamiliar with the [service] would doubtless have an idea of its purpose or function." *Zatarains* at 792-793; *see also*, *Vision Center*, 596 F.2d at 116-17 ("the trade name 'Vision Center' is descriptive of a clinic providing optical goods and services"). Accordingly, plaintiff's mark, BRUSH DENTISTRY, is descriptive when examined under the "imagination test."

6.    The terms "brush" and "dentistry" naturally occur to one in thinking of a dental consultation, particularly with regards to proper oral hygiene and prevention measures. Therefore they lack the quality of inventiveness and imaginativeness characteristic of suggestive trademarks. *See Vision Center* at 116.

7.    Plaintiff's statement—that it neither sells brushes, manually brushing services, nor advice on how to brush teeth—even if true, does not necessarily preclude that they do not provide *any* brushing service for their patients. For example, plaintiff may provide brushes to patients as a courtesy or door favor and at the very least concedes it provides advice on brushing routines.

### 3.    Plaintiff's trademark has not acquired a secondary meaning.

8.    The revenue and growth figures submitted by plaintiff, though indicating a successful practice, do not establish a secondary meaning because they do not independently show that, in the minds of the public, the primary significance of "brush dentistry" can be attributed to the plaintiff's services.

9.    Paintiff's mere opinion that it is well-known in Texas is insufficient to establish that the general consumer of dental services in Texas has even heard of the plaintiff, let alone associated the term "brush dental" primarily with the plaintiff's services. See e.g., Dep. of Dr. Jennifer Libling at 138:2-19.

10.    Plaintiff has not acquired a secondary meaning of BRUSH DENTISTRY through exclusive and continuous use. First, plaintiff acknowledges the presence and coexistence of multiple third party uses of the terms "brush", "dental", "brush dentistry", and variations thereof. Second, the presence of so many third party uses of these terms defeats as a matter of law any initial assumptions that plaintiff's mark has acquired secondary meaning through "exclusive use". *See, e.g., Levi Strauss & Co. v. Genesco, Inc.*, 742 F.2d 1401, 1403, 222 USPQ 939, 940-41 (Fed. Cir. 1984) ("When the record shows that purchasers are confronted with more than one (let alone numerous) independent users of a *term* or device . . . distinctiveness on which purchasers may rely is lacking under such circumstances.") (emphasis added).

12

**B.      There is no likelihood of confusion between the parties' marks, which precludes all of Plaintiff's causes of action**

43.      "Likelihood of confusion' means *more than a mere possibility*; the plaintiff must demonstrate a *probability* of confusion." *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009) (emphasis added).

44.      Despite establishing identical use between the parties of the literal term "brush dentistry", and arguably similar services provided by each party under the mark, Plaintiff has failed to establish its evidentiary burden to demonstrate that any of the other digits favor a finding of likelihood of confusion as a matter of law.

45.      Considering the long-standing, coexisting use of the terms "brush" and "dentistry" by numerous third parties throughout Texas, plaintiff's BRUSH DENTISTRY mark is not exclusive, strong, or distinctive. Further, the limited geographic scope of plaintiff's reputation and activities, and prior common law rights of at least one or more third parties further compound the weak nature of plaintiff's mark.

46.      The mere online availability of each party does not establish any similarity between the parties' respective advertising outlets, purchaser identities, or media identities.

47.      The target audience and prospective client base of each party is purely local and potential purchasers exercise sufficient care as to avoid confusion between the two practices. The considerable resources dedicated by Plaintiff to

target only prospective clients living within proximity of its single location further underscores that confusion is unlikely.

48.     Plaintiff fails to present facts or law sufficient to establish that any actual confusion between the source of each party's services has occurred. Further, potential consumers of dental services are highly sophisticated, exercise great care, and unlikely to be susceptible to initial interest confusion between the marks.

### 1.     Plaintiff's mark is not distinctive

49.     "'Type of trademark' refers to the strength of the senior mark. Stronger marks are entitled to greater protection." *Id.*

50.     Because the terms "brush", "dentistry", "brush dentistry", and variations thereof, are used by numerous dental practices, they are not strong or distinctive marks. Further, because of the generic or descriptive nature of the terms "brush" and "dentistry" within the industry, this digit favors that the mark BRUSH DENTISTRY is weak.

### 2.     The parties' logos are distinguishable

51.     Based on the differences the "total effect" conveyed by the parties' mark designs is different and unlikely to generate confusion as to the source of each. *See Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 261 (5th Cir.1980) (in considering the "total effect of the designation" there was "little similarity" between marks).

52.    The use of blues and whites to appeal to consumers is generic to the dental and medical industries. These colors have a functional purpose to convey trust, comfort, and intelligence to existing and potential patients.

### 3.    The parties' services are distinguishable

53.    To the extent Plaintiff does not provide brushes or brushing services then the parties' services differ in this regard.

### 4.    The parties market to different outlet and purchaser identities

54.    The lack of patients in the greater Houston and Spring, TX areas and inability by plaintiff to establish the circumstances in which each client was first serviced strongly suggests that plaintiff's presence in these areas, if any, has not been continuous or uninterrupted.

55.    Despite Plaintiff's assertions otherwise, Plaintiff does not in practice treat the markets of Spring, TX and the greater Houston, TX as viable channels for marketing its services.

56.    DFW and the greater Houston area different outlets comprising different purchaser identities.

### 5.    The parties market to different advertising media identities

57.    Online review and search engine channels—which merely comprise the activities of third-party internet service providers—do not constitute advertising media identities as a matter of law because they only broadcast the location of the entity's online material or provide a forum for public discourse.

58.     The use of one or more social media hashtags would only establish an advertising media identity if the content published offered a service and associated the user's mark as an indicator of the source of the services. *See, e.g.,* TRADEMARK MANUAL OF EXAMINING PROCEDURE § 1202.18 (2017)

**6.     Defendants lack intent to usurp plaintiff's goodwill**

59.     Whether defendants correctly assumed that plaintiff does not have a valid claim of trademark infringement, this inherently speaks to the defendants' lack of intent to usurp plaintiff's goodwill in the marketplace by creating confusion between the parties' marks. If, for example, defendants believed plaintiff had no goodwill within the scope of defendants' actual and intended use of the mark, then there could be no intent to usurp it.

60.     Defendants never invited comparisons between its services and plaintiff's services nor targeted plaintiff's patients or deceived potential clients with its services.

**7.     There are no instances of actual confusion between the parties' marks**

61.     "Confusion of *origin*, not the identity of marks, is the gravamen of trademark infringement." *Xtreme Lashes,* 576 F.3d at 229. (emphasis added).

62.     Despite having mistaken the identity of the marks, Ms. Kay could not have been confused about the origin of services.

63.   Because the alleged confusion asserted by Plaintiff amounts to a confusion in the identity of the marks and not a confusion of origin, and both marks have coexisted for at least 12 months, plaintiff's inability to point to a single incident of confusion of origin in the marks is "highly significant". *See, Oreck Corp. v. U.S. Floor Systems, Inc.,* 803 F.2d 166, 173 (5th Cir.1986) (determining that plaintiff's inability to identify a single instance of marketplace confusion after 17 months of concurrent use was "highly significant").

### 8.   Potential purchasers of dental services exercise great care

64.   Purchasers of dental services are highly sophisticated and exercise great care in selecting a dental practice.

65.   "simply invoking the term 'initial-interest confusion' does not state a viable claim." *Board of Regents of University of Houston System on behalf of University of Houston System v. Houston College of Law, Inc.*, 214 F.Supp.3d 573 (2016).

66.   Even if initial interest confusion applied in this case, Plaintiff has not provided any evidence that the confusion would preclude the plaintiff "from further consideration by the potential purchaser in reaching his or her buying decision." J. Thomas McCarthy, MᴄCᴀʀᴛʜʏ ᴏɴ Tʀᴀᴅᴇᴍᴀʀᴋs ᴀɴᴅ Uɴꜰᴀɪʀ Cᴏᴍᴘᴇᴛɪᴛɪᴏɴ § 23:6 (4th ed. 2015).

**C.    Defendants' affirmative defenses are valid and preclude Plaintiff's trademark causes of action**

67.    The affirmative defense of prior use comprises the following elements: (1) defendants used the mark in good faith; (2) prior to plaintiff's use of the mark; (3) in a geographically remote trade area. Texas Tech University v. Spiegelberg, 461 F.Supp.2d 528 (2006), citing McCarthy 26:4 ("the national senior user of a mark  cannot oust a  geographically remote good-faith user who has used the mark first in a remote trade area. . . .).

**1.    Defendants have used the BRUSH DENTISTRY mark in good faith**

68.    It is unlikely defendants could adopt the term "brush dentistry" in bad faith without using the term as a mark. Likewise, any argument by plaintiff that a likelihood of confusion exists between the parties' marks presupposes that the defendants have used the mark in commerce.

69.    Adopting a remote user's mark prior to that user's registration only precludes a prior use defense when the registered mark has acquired federal incontestability status. *Accord Peaches*, 62 F.3d at 692 (5th Cir. 1995); 15 U.S.C. § 1115(b)(5) (limiting the scope of infringement defenses against *incontestable* federal trademarks).

70.    When a mark is *not* incontestable and the junior user of a mark has gained a reputation within a geographic area, that area "comprise[s] the junior

user's trade territory at the time the senior user obtained registration. *Peaches* 62

F.3d at 693 (5th Cir. 1995); *see also Southwestern Management, Inc. v. Ocinomled,*

*Ltd.*, 115 USPQ2d 1007 (TTAB 2015) ("... even if Applicant had knowledge of

Defendant's prior common law uses, such knowledge would not necessarily

obviate good faith on the part of Applicant, as Applicant could have believed that

its adoption was sufficiently remote so as to make confusion unlikely."), *aff'd*

*mem.*, 652 F. App'x 971 (Fed. Cir. 2016).

### 2. Defendants used the BRUSH DENTISTRY mark prior to plaintiff in Spring, TX and the greater Houston area.

71.    "At common law, trademark ownership is acquired by actual use of

the mark in a given market." *Emergency One, Inc. v. Am. Fire Eagle Engine Co.,*

*Inc.*, 332 F.3d 264, 267 (4th Cir. 2003). Such use must be uninterrupted and

continuing. *See Blue Bell, Inc. v. Farah Mfg. Co., Inc.*, 508 F.2d 1260, 1265 (5th

Cir. 1975).

72.    To prevail under common law, plaintiff must "acquire[] ownership of

[its] mark *within the geographic area* in which [it] is currently using the mark."

*Union Nat. Bank of Tex., Laredo, Tex. v. Union Nat. Bank of Tex., Austin,*

*Tex.*, 909 F.2d 839, 843 (5th Cir. 1990)) (emphasis added).

73.    "Merely advertising a mark in a given territory is insufficient to

establish use—advertisements must have the desired effect of penetrating the

consumer market in that location." *Diamonds Direct USA, Inc. v. BFJ Holdings,*

*Inc.*, 895 F.Supp.2d 752, 759 (E.D. Va. 2012) (citing *Spartan Food Sys., Inc. v. HFS Corp.*, 813 F.2d 1279, 1283 (4th Cir. 1987)); *see New W. Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1200 (9th Cir. 1979).

74.   Plaintiff has not established anything more than a mere online availability of its website or social media pages within the greater Houston, and Spring, TX areas, where defendants maintain their business. Neither has Plaintiff established the same of defendants in the Dallas-Fort Worth metroplex area, where Plaintiff operates.

75.   Because no trademark registration can "adversely affect[] common law rights acquired prior to registration", plaintiff's registered mark, if valid, is not enforceable against defendants in the Spring, TX or greater Houston areas. TEX. BUS. & COM. CODE § 16.107.

### 3. Spring, TX and the greater Houston area are geographically remote trade areas with respect to Plaintiff.

76.   "A 'remote' territory is one where, at the critical date of the junior user's first use, the senior user's mark was not known by customers in that territory, such that no one would have been confused as to the source." McCarthy 26:4.

### D. Plaintiff has failed to establish the elements of unfair competition

77.    "To prove unfair competition . . . [Plaintiff] must show that the use of its marks by [Defendants] is likely to cause confusion among consumers as to the source, affiliation, or sponsorship of [the defendants'] products or services." *Boston*

*Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.,* 510 F.2d 1004, 1010 (5th Cir.1975).

78.     Generally, the same evidence that supports an action for trademark infringement under the Lanham Act also supports an action for unfair competition. *Marathon Mfg. Co. v. Enerlite Prods. Corp.,* 767 F.2d 214, 217 (5th Cir.1985).

79.     A reasonable potential client, without prior relationships or referrals, would be unlikely to travel approximately 250 miles to receive dental services unless the client is so sophisticated and informed as to devalue all likelihood of confusion digits.

**E.      Plaintiff has not been damaged by Defendants' actions**

80.     The nature of Defendants' activities have not adversely affected Plaintiff

81.     Any remedies awarded to Plaintiff shall be compensatory, not punitive

82.     This dispute is not an exceptional case that gives rise to attorney's fees.

21

Dated: December 29, 2017

Respectfully submitted,

*/Brandon J. Leavitt/*                                    .

**BRANDON JAMES LEAVITT**
Texas Bar No. 24078841
777 Main Street, Suite 600
Fort Worth, TX 76102
Telephone  (214) 727-2055
brandon@dfwpatentlaw.com

**ATTORNEY FOR DEFENDANTS**

**DR. PHUONG PHAM AND**
**SERENITY DENTISTRY, PLLC D/B/A**
**BRUSH DENTISTRY**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the above and foregoing document has been forwarded to all counsel of record in accordance with the Federal Rules of Civil Procedure on this the 29th day of December 2017.

David L. Clark
Law Offices of David L. Clark
P. O. Box 540183
Houston, Texas 77254

Via Email david@law-dlc.com

*/Brandon J. Leavitt/*                                    .
**BRANDON JAMES LEAVITT**